# No. <u>23-12095-B</u>

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ISAAC INDUSTRIES, INC.
*Plaintiff-Appellee*

v.

BARIVEN, S.A.; PETROQUÍMICA DE VENEZUELA, S.A.
*Defendants-Appellants*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
No. 1:19-CV-23113-RNS

## OPENING BRIEF OF DEFENDANTS/APPELLANTS
## BARIVEN, S.A. AND PETROQUÍMICA DE VENEZUELA, S.A.

Claire A. DeLelle
Benedict S. Bernstein
White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C., 20005
claire.delelle@whitecase.com
benedict.bernstein@whitecase.com
(202) 626-3600

Daniel Grossbaum
White & Case LLP
1221 Avenue of the Americas
New York, N.Y. 10020
dan.grossbaum@whitecase.com
(212) 819-8200

Jaime A. Bianchi
Veronica Gordon
White & Case LLP
200 S Biscayne Blvd.
Miami, FL 33131
jbianchi@whitecase.com
vgordon@whitecase.com
(305) 371-2700

*Counsel for Bariven, S.A. and
Petroquímica de Venezuela, S.A.*

## AMENDED CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, Appellants Petroquímica de Venezuela, S.A. ("Pequiven") and Bariven, S.A. (collectively, "Defendants") certify the following individuals and parties may have an interest in the outcome of this appeal.

1. Avan, David (President of Appellee, Isaac Industries, Inc.)

2. Avan, Molly (Vice President of Appellee, Isaac Industries, Inc.)

3. Avan, Rachel (Director of Appellee, Isaac Industries, Inc.)

4. Bariven, S.A. (Appellant)

5. Becerra, the Honorable Jacqueline (United States Magistrate Judge)

6. Bellorin Gonzalez, Jesus Eduardo (Sole Administrator of Pequiven)

7. ***Bernstein, Benedict S. (Counsel for Appellants)***

8. Bianchi, Jaime (Counsel for Appellants)

9. Blasi, Fernando (Member of CAPA)

10. Boscán Prieto, Exeario Darío (Member of the Ad Hoc Administrative Board of Petróleos de Venezuela, S.A.)

11. Cárdenas, Julián (Member of the Ad Hoc Administrative Board of Petróleos de Venezuela, S.A.)

12. Council for the Management and Protection of Assets of the Republic of Venezuela (Consejo de Administración y Protección de Activos de la República de Venezuela) ("CAPA")

13. DeLelle, Claire (Counsel for Appellants)

14. Goicoechea, Yon (Member of CAPA)

15. Goodman, the Honorable Jonathan (United States Magistrate Judge)

16. Gordon, Veronica (Counsel for Appellants)

17. Gourlis, Charles (Counsel for Appellee)

18. Grossbaum, Daniel (Counsel for Appellants)

19. Hogan Lovells US LLP (Former Counsel for Appellants)

20. Isaac Industries, Inc. (Appellee)

21. King, the Honorable James Lawrence (United States District Court Judge)

22. Leto, Matthew (Counsel for Appellee)

23. Leto Law Firm (Counsel for Appellee)

24. Linares, Javier (Member of the Ad Hoc Administrative Board of Petróleos de Venezuela, S.A.)

25. Lindsay, Alvin F., III (Former Counsel for Appellants)

26. Lorenzo, Richard C. (Former Counsel for Appellants)

27. Marcano, Gustavo (Coordinator of CAPA)

28. Medina, Horacio (Chairman of the Ad Hoc Administrative Board of Petróleos de Venezuela, S.A.)

29. Millan, Carlos (Member of CAPA)

30. Petroquímica de Venezuela, S.A. (Appellant)

31. Prada, Ricardo (Member of the Ad Hoc Administrative Board of Petróleos de Venezuela, S.A.)

32. Ribeiro, Rafael Rodrigues (Former Counsel for Appellants)

33. Sanchez, Alejandra (Counsel for Appellants)

34. Sanchez-Roig, Adrian Reinaldo (Former Counsel for Appellants)

35. Scola, the Honorable Robert N. (United States District Court Judge)

36. Uzcategui, Rene (Member of CAPA)

37. White & Case LLP (Counsel for Appellants)

Pequiven submits that it is wholly owned by the Bolivarian Republic of Venezuela.  Bariven submits that it is wholly owned by Petróleos de Venezuela, S.A., which in turn is wholly owned by the Bolivarian Republic of Venezuela.  No publicly traded company or corporation has a financial interest in the outcome of this case or appeal.

/s/ *Claire A. DeLelle*
Claire A. DeLelle

# STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 31(a)(2) and Eleventh Circuit Rule 28-1(c), Appellants respectfully submit that oral argument will aid the Court's consideration of this appeal.

This appeal presents important questions about the proper application of the service and immunity provisions of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–11, as applied to an agency or instrumentality of a foreign state. This appeal further implicates the proper interpretation and application of an international treaty to which the United States is a signatory — the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Convention"). This appeal further addresses important questions about the protection of Appellants' due process rights, the resolution of which implicates U.S. foreign-policy concerns as it relates to the ongoing political crisis in the Bolivarian Republic of Venezuela.

# TABLE OF CONTENTS

**Page**

AMENDED CERTIFICATE OF INTERESTED PERSONS  AND
CORPORATE DISCLOSURE STATEMENT .....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT .............................................iv

TABLE OF CITATIONS ....................................................................... vii

INTRODUCTION ............................................................................1

STATEMENT OF JURISDICTION.........................................................3

STATEMENT OF THE ISSUES............................................................4

STATEMENT OF THE CASE...............................................................5

     A.     The Ongoing Political Crisis in Venezuela ......................... 5

     B.     District Court Proceedings ................................................ 7

STANDARD OF REVIEW ..................................................................16

SUMMARY OF THE ARGUMENT ......................................................17

ARGUMENT ..................................................................................19

I.     THE DISTRICT COURT'S JUDGMENT IS VOID FOR LACK OF
PERSONAL JURISDICTION DUE TO PLAINTIFF'S FAILURE TO
EFFECT PROPER SERVICE..................................................................19

     A.     Plaintiff Failed to Properly Serve Pequiven Under the FSIA ............ 20

     B.     Plaintiff Failed to Properly Serve Bariven Under Rule 4(h)(2)......... 24

II.     THE DISTRICT COURT'S FINAL JUDGMENT IS VOID FOR LACK
OF SUBJECT-MATTER JURISDICTION AS TO PEQUIVEN UNDER
THE FSIA .......................................................................................25

    A.    The District Court Erred in Holding that Plaintiff Established that the Commercial-Activity Exception Overcame Pequiven's Foreign Sovereign Immunity ........................................................................ 25

    B.    The District Court Erred in Concluding that Pequiven's Litigation Conduct Implicitly Waived Its Foreign Sovereign Immunity ........... 39

III.    THE DISTRICT COURT ERRED IN FINDING PLAINTIFF MET ITS SUMMARY JUDGMENT BURDEN ...........................................................41

    A.    Plaintiff Failed to Carry Its Burden on Its Contract Claim as to Bariven ............................................................................................. 42

    B.    The District Court Erred in Holding That Plaintiff Had Carried Its Summary Judgment Burden as to Its Claim Against Pequiven ......... 45

IV.    THE DISTRICT COURT DENIED DEFENDANTS THEIR DUE PROCESS AND LEGAL RIGHTS...............................................................46

CONCLUSION ......................................................................................................48

CERTIFICATE OF COMPLIANCE ....................................................................49

CERTIFICATE OF SERVICE .............................................................................50

# TABLE OF CITATIONS

**Page(s)**

## CASES

*Adler v. Fed. Republic of Nigeria*,
　107 F.3d 720 (9th Cir. 1997) .................................................................39

*Aquamar S.A. v. Del Monte Fresh Produce N.A.*,
　179 F.3d 1279 (11th Cir. 1999) ........................................................30, 32

*\*Araya-Solorzano v. Government of Republic of Nicaragua*,
　562 F. App'x 901 (11th Cir. 2014) .....................................................39

*Argentine Republic v. Amerada Hess Shipping Corp.*,
　488 U.S. 428 (1989)...............................................................................25

*Arrington v. Cobb Cnty.*,
　139 F.3d 865 (11th Cir. 1998) ........................................................37, 44

*Bhattacharya v. State Bank of India*,
　70 F.4th 941 (7th Cir. 2023) ..............................................................38

*\*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
　581 U.S. 170 (2017)..........................................................................26, 33

*Broidy Cap. Mgmt. v. Benomar*,
　944 F.3d 436 (2d Cir. 2019) ...............................................................27

*Brownback v. King*,
　141 S. Ct. 740 (2021)............................................................................33

*\*Butler v. Sukhoi Co.*,
　579 F.3d 1307 (11th Cir. 2009) ......................................................26, 33

*\*Calzadilla v. Banco Latino Internacional*,
　413 F.3d 1285 (11th Cir. 2005) ......................................................16, 40

*Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*,
　727 F.2d 274 (2d Cir. 1984). .............................................................41

vii

*CapitalKeys, LLC v. Democratic Republic of Congo,
  2022 WL 2902083 (D.C. Cir. July 22, 2022)...............................................28, 35

Chan v. Korean Air Lines, Ltd.,
  490 U.S. 122 (1989).....................................................................................23

Commodities & Mins. Enter. v. CVG Ferrominera Orinoco, C.A.,
  49 F.4th 802 (2d Cir. 2022) ........................................................................21

Conner, I, Inc. v. Walt Disney Co.,
  827 So. 2d 318 (Fla. 5th DCA 2002)..........................................................43

DaimlerChrysler Corp. v. Cuno,
  547 U.S. 332 (2006).....................................................................................27

Dale v. Colagiovanni,
  443 F.3d 425 (5th Cir. 2006) ................................................................28, 30

Daou v. BLC Bank, S.A.L.,
  42 F.4th 120 (2d Cir. 2022) ........................................................................38

De Gazelle Grp., Inc. v. Tamaz Trading Establishment,
  817 F.3d 747 (11th Cir. 2016) ....................................................................19

Devengoechea v. Bolivarian Republic of Venezuela,
  889 F.3d 1213 (11th Cir. 2018) ............................................................30, 32

Doe I v. State of Israel,
  400 F. Supp. 2d 86 (D.D.C. 2005)...............................................................38

Dole Food Co. v. Patrickson,
  538 U.S. 468 (2003).......................................................................................9

Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari,
  12 F.3d 317 (2d Cir. 1993) ....................................................................40, 41

Fernandez v. Bankers Nat. Life Ins. Co.,
  906 F.2d 559 (11th Cir. 1990) ...............................................................46, 47

First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission,
  877 F.2d 189 (2d Cir. 1989) ..........................................................1, 30, 32, 36

*Fla. Power & Light Co. v. McRoberts,
257 So. 3d 1023 (Fla. 4th DCA 2018) .............................................45

Frovola v. Union of Soviet Socialist Republics,
761 F.2d 370 (7th Cir. 1985) ........................................................41

GDG Acquisitions LLC v. Government of Belize,
849 F.3d 1299 (11th Cir. 2017) .............................................29, 30, 32

Guevara v. Republic of Peru,
608 F.3d 1297 (11th Cir. 2010) ......................................................39

Johnson Enters. of Jacksonville, Inc. v. FPL Grp.,
162 F.3d 1290 (11th Cir. 1998) ......................................................36

Jones v. City of Columbus,
120 F.3d 248 (11th Cir. 1997) ...................................................17, 47

Landcastle Acquisition Corp. v. Renasant Bank,
57 F.4th 1203 (11th Cir. 2023) ......................................................36

*Lindsey v. Normet,
405 U.S. 56 (1972) ....................................................................46

OBB Personenverkehr AG v. Sachs,
577 U.S. 27 (2015) ....................................................................35

OFS Fitel, LLC v. Epstein,
549 F.3d 1344 (11th Cir. 2008) ......................................................34

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,
484 U.S. 97 (1987) ....................................................................19

*Phaneuf v. Republic of Indonesia,
106 F.3d 302 (9th Cir. 1997) .....................................................28, 29

Prewitt Enters. v. O.P.E.C.,
353 F.3d 916 (11th Cir. 2003) .......................................................16

Republic of Argentina v. Weltover, Inc.,
504 U.S. 607 (1992) ...................................................................38

*Republic of Sudan v. Harrison,
  139 S. Ct. 1048 (2019)..................................................................19, 20, 21, 24

S. Cent. Steel, Inc. v. McKnight Constr. Co.,
  2007 WL 9701114 (S.D. Ga. Jan. 29, 2007) .......................................44

*Saint-Gobain Perf. Plastics Eur. v. Bolivarian Republic of Venezuela,
  23 F.4th 1036 (D.C. Cir. 2022).......................................................22, 23

Samantar v. Yousuf,
  560 U.S. 305 (2010)..............................................................................29

Samco Global Arms, Inc. v. Arita,
  395 F.3d 1212 (11th Cir. 2005) ..........................................................38

Saudi Arabia v. Nelson,
  507 U.S. 349 (1993)..............................................................................26

Scott v. Harris,
  550 U.S. 372 (2007)..............................................................................37

*Sequeira v. Republic of Nicaragua,
  815 F. App'x 345 (11th Cir. 2020) .......................................26, 35, 39

Snook v. Trust Co. of Ga. Bank of Savannah, N.A.,
  859 F.2d 865 (11th Cir. 1988) ............................................................47

Taylor v. Mentor Worldwide LLC,
  940 F.3d 582 (11th Cir. 2019) .....................................................17, 34

Turnes v. AmSouth Bank, N.A.,
  36 F.3d 1057 (11th Cir. 1994) ............................................................17

*United States v. Four Parcels of Real Prop. In Greene & Tuscaloosa
  Counties in State of Ala.,
  941 F.2d 1428 (11th Cir. 1991) (en banc) .........................................41

United States v. Madden,
  733 F.3d 1314 (11th Cir. 2013) ..........................................................26

United World Trade v. Mangyshlakneft Oil Prod. Ass'n,
  33 F.3d 1232 (10th Cir. 1994) ............................................................38

*Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*,
    674 F.2d 1365 (11th Cir. 1982) .................................................20, 24

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) .................................................43, 45

*Velasco v. Government of Indonesia*,
    370 F.3d 392 (4th Cir. 2004) .....................................................29, 33

*Verlinden B.V. v. Cent. Bank of Nigeria*,
    461 U.S. 480 (1983).........................................................................27

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988).........................................................................21

*Water Splash, Inc. v. Menon*,
    581 U.S. 271 (2017).........................................................................23

*Wye Oak Tech., Inc. v. Republic of Iraq*,
    24 F.4th 686 (D.C. Cir. 2022)........................................................41

## STATUTES AND RULES

28 U.S.C. § 1291 ...................................................................................3

*28 U.S.C. § 1330...........................................................................4, 19

28 U.S.C. § 1332(a) .............................................................................4

28 U.S.C. § 1603(b) .......................................................................9, 20

28 U.S.C. § 1604.................................................................................25

*28 U.S.C. § 1605......................................................................passim

28 U.S.C. § 1607.................................................................................26

*28 U.S.C. § 1608......................................................................passim

*Fed. R. Civ. P. 4........................................................................passim

Fed. R. Civ. P. 5............................................................................23, 24

Fed. R. Civ. P. 26...............................................................................14

Fed. R. Civ. P. 37 ...............................................................14, 15, 17, 34

*Fed. R. Civ. P. 56(d) ...................................................................passim

*Fla. Stat. § 672.201(1)..................................................................18, 42

## MISCELLANEOUS

Br. of U.S. Dep't of State as Amicus Curiae, *Broidy Cap. Mgmt. v. Benomar*, No. 19-236, ECF No. 71 (2d Cir. Oct. 9, 2019) .......................................................27

*Declaration 3 of the Bolivarian Republic Venezuela to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ...................................................................................22

11 Fla. Jur. 2d Contracts § 84 ..........................................................36, 37

*Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ...........................................10, 11, 22, 23

Restatement (2d) of Agency (Am. L. Inst. 1958) ..............................29, 32

Restatement (3d) of Agency (Am. L. Inst. 2006) ..............................29, 30

Restatement (2d) of Contracts (Am. L. Inst. 1981) ..................................36

U.S. Dep't of the Treas., Fin. Crimes Enforcement Network, *Updated Advisory on Widespread Public Corruption in Venezuela* (May 3, 2019).........31

# INTRODUCTION

This case comes to the Court marred with substantive and procedural errors that resulted in an improper grant of summary judgment against Defendants Pequiven, an agency or instrumentality of a foreign state entitled to presumptive immunity from the jurisdiction of U.S. courts under the FSIA, and Bariven, a wholly owned subsidiary of Venezuela's wholly owned national oil company, Petróleos de Venezuela, S.A. ("PDVSA"). These errors began with Plaintiff, Isaac Industries, Inc. ("Isaac"), failing to properly serve the summons and complaint on either Defendant. This fatal defect was never remedied. As a result, the district court entered its Final Judgment without Plaintiff ever establishing personal jurisdiction over Defendants and based on a summary judgment order that erroneously found subject-matter jurisdiction under the FSIA, misapplied Florida law, and violated Defendants' due process rights. Defendants appeal because the errors below rendered the Final Judgment void and subject to vacatur.

*First*, Plaintiff never properly served Pequiven under the mandatory service provisions of the FSIA, 28 U.S.C. § 1608(b), and never properly served Bariven under Rule 4(f) of the Federal Rules of Civil Procedure. Both provisions required service in compliance with the Hague Convention. The district court thus never obtained personal jurisdiction over either Defendant. Without personal jurisdiction, the district court's orders, including its Final Judgment, are void.

*Second*, the district court lacked subject-matter jurisdiction as to Pequiven because Plaintiff failed to carry its burden of establishing an applicable exception to Pequiven's presumptive foreign sovereign immunity. Plaintiff alleged, but failed to establish, that the district court had jurisdiction based on the FSIA's so-called "commercial-activity exception," 28 U.S.C. § 1605(a)(2). The district court erroneously shifted to Pequiven the burden of proving the exception did not apply, incorrectly concluded that the exception did apply, and erroneously held that Pequiven had, in any case, implicitly waived its immunity. These rulings all were incorrect, and without subject-matter jurisdiction, the district court's orders as to Pequiven, including its Final Judgment, are void.

*Third*, compounding the consequences of these jurisdictional errors, the district court granted summary judgment to Plaintiff on its breach-of-contract claims against each Defendant despite inadequate support in the record. Plaintiff alleged that Bariven failed to make payment on a contract for the sale of goods and Pequiven failed to make payment on a subsequent guaranty agreement as to Bariven's alleged debt. As to Bariven, Plaintiff failed to produce evidence of a written contract for a sale made and signed by Bariven, as required under Florida's statute of frauds. As to Pequiven, Plaintiff failed to prove the underlying debt or that the agreement Pequiven purportedly entered to guaranty Bariven's alleged debts was valid, binding, and enforceable. Indeed, Plaintiff failed to establish that someone with

authority to bind Pequiven entered the agreement, or that the agreement was supported by consideration. Plaintiff therefore was not entitled to summary judgment on either of its contract claims.

*Finally*, the district court's grant of summary judgment violated Defendants' due process rights and was improper under Rule 56(d) of the Federal Rules of Civil Procedure. Defendants were, and remain, unable to access their facilities, files, and personnel at their corporate headquarters to formulate a full and fair defense in this litigation. Defendants' lack of access is through no fault of their own, but stems from the ongoing political crisis in Venezuela created by Nicolás Maduro's usurpation of the presidency of Venezuela following illegitimate elections in 2018. Since 2019, the Maduro regime has maintained and continues to maintain unlawful control of Venezuela and its state-owned entities, including Defendants. In the face of these extraordinary circumstances, the district court should have deferred its consideration of a motion for summary judgment to provide Defendants an opportunity to mount a complete defense. The district court instead entered judgment for Plaintiff. That was an abuse of discretion, and this Court should reverse.

## STATEMENT OF JURISDICTION

This Court has jurisdiction to review the district court's Final Judgment and related orders under 28 U.S.C. § 1291. These appeals were timely filed on June 23,

2023, where the Final Judgment against Defendants was entered on June 16, 2023. D.E. 159–61.

The district court had subject-matter jurisdiction as to the claims against Bariven under 28 U.S.C. § 1332(a) because Plaintiff is a citizen of Florida and Bariven is a citizen of a foreign state, Venezuela, and the amount in controversy exceeded $75,000.

The district court purported to exercise subject-matter jurisdiction over the action against Pequiven under 28 U.S.C. § 1330 and § 1605(a), D.E. 153 at 7–10, which exercise of jurisdiction Pequiven disputes.

## STATEMENT OF THE ISSUES

1.      Whether the district court's Final Judgment is void for lack of personal jurisdiction because Plaintiff failed to properly serve the summons and complaint on Pequiven or Bariven.

2.      Whether the district court erred in concluding that Plaintiff satisfied its burden to prove that the FSIA's so-called commercial-activity exception, 28 U.S.C. § 1605(a)(2), applied to overcome Pequiven's presumptive foreign sovereign immunity.

3.      Whether the district court erred in concluding that Pequiven implicitly waived its foreign sovereign immunity under 28 U.S.C. § 1605(a)(1).

4.      Whether the district court erred in finding Plaintiff satisfied its burden to support summary judgment in its favor as to its contract claim against Bariven, even though Plaintiff never produced a signed, written agreement between Plaintiff and Bariven, as required by Florida's statute of frauds.

5.      Whether the district court erred in finding Plaintiff met its burden on its contract claim against Pequiven despite Plaintiff's failure to present evidence of a valid, binding contract.

6.      Whether the district court abused its discretion by denying Defendants' request under Rule 56(d) of the Federal Rules of Civil Procedure to hold its decision on summary judgment in abeyance where Defendants were unable to defend on the merits due to the unlawful control exercised by the illegitimate regime of Nicolás Maduro over Defendants' offices, records, and operations in Venezuela.

## STATEMENT OF THE CASE

### A.      The Ongoing Political Crisis in Venezuela

On January 10, 2019, following rigged elections, then-President Nicolás Maduro purported to assume the presidency of Venezuela.  D.E. 133 ¶¶ 38–39.  That same day, pursuant to the Venezuelan constitution, Venezuela's National Assembly ("2015 National Assembly") — Venezuela's democratically elected congressional body — declared Maduro's presidency illegitimate.  *Id.* ¶ 39.  The 2015 National Assembly then formed an Interim Government to manage Venezuela's affairs.  *Id.*

5

¶ 40.  Upon its formation, then-President of the United States, Donald Trump, immediately recognized the Interim Government and the 2015 National Assembly as the legitimate governing bodies of Venezuela.  *Id.* ¶ 41.  The United States continues to recognize the 2015 National Assembly as the only legitimate government in Venezuela.  *Id.* ¶ 42

As a result of the illegitimate Maduro regime's usurpation of the presidency of Venezuela and *de facto* control in Venezuela, the Maduro regime has maintained unlawful control of the offices, records, and operations in Venezuela of state-owned entities, including Pequiven and Bariven.  *See id.* ¶¶ 46–47.  To manage the affairs of Venezuela's state-owned entities abroad, the Interim Government established ad hoc boards and vested in them that responsibility.  *See id.* ¶ 44.  To that end, the Interim Government established the Ad Hoc Administrative Board of PDVSA to protect the interests and assets of PDVSA and its subsidiaries, of which Bariven is one, as well as an Ad Hoc Administrative Board of Pequiven.  *See id.* ¶¶ 44, 47.  On March 27, 2023, the 2015 National Assembly, through the Council for the Administration and Protection of Assets ("CAPA"), replaced Pequiven's Ad Hoc Administrative Board with the position of Single Administrator for Pequiven and appointed Jesus Eduardo Bellorin Gonzalez to that role.  *Id.* ¶ 50.  Despite the 2015 National Assembly's continued efforts, the illegitimate Maduro regime maintains *de*

*facto* control in Venezuela and over Defendants' facilities, which are located there. *See id.* ¶¶ 46–47.

## B.      District Court Proceedings

### 1.      Initial Complaint and Attempts at Service

Plaintiff filed its initial complaint on July 26, 2019, alleging that Plaintiff entered into a contract with Bariven to sell $17,831,772.18 worth of 2-Ethylhexanol based on orders received from unidentified individuals at Bariven in 2014.  D.E. 1 ¶ 13.  Though Plaintiff alleged it contracted with Bariven, Plaintiff attached invoices to its Complaint that reflect that the goods were sold to Bariven "C/O PDVSA Services, B.V." at PDVSA Services B.V.'s address in the Netherlands.[1]  *See id.* at 9–11.  Plaintiff alleged that, after shipping the goods, Bariven breached the contract and was liable on an account-stated claim because it purportedly failed to pay the sums reflected in the invoices.  *Id.* ¶ 14; *id.* at 7.

Plaintiff further alleged a contract claim against Pequiven.  Specifically, Plaintiff alleged that after Bariven purportedly breached its contract, Plaintiff and supposed representatives of Pequiven met to discuss Bariven's debts, and after this meeting, "Pequiven undertook the obligation to make the payments owed to"

---

[1] Plaintiff also named PDVSA Services, B.V. and PDVSA as defendants.  Both PDVSA Services, B.V. and PDVSA were dismissed from the case and therefore Plaintiff's allegations and the proceedings below relevant to those defendants are omitted from this Statement of the Case.  *See* D.E. 81 at 5, 7 (dismissing PDVSA and discussing dismissal of PDVSA Services, B.V.).

Plaintiff. *Id.* ¶ 15. According to Plaintiff, Pequiven and Plaintiff entered a "written agreement," signed by an individual named "Saul Silva" for "Pequiven S.A.," whereby Pequiven agreed to pay $17,831,772.18 in consideration for Plaintiff's "release of the debt owed by" Bariven. *Id.* ¶ 17; *id.* at 12. Plaintiff alleged Pequiven made a single payment before breaching the agreement by failing to make further payments. *Id.* ¶¶ 19–20.

When Plaintiff failed to file certificates of service within 90 days of filing the Complaint, the district court ordered Plaintiff to show cause why Defendants had not been served. D.E. 4. Plaintiff argued that the 90-day requirement of Rule 4(m) of the Federal Rules of Civil Procedure did not apply because Defendants were foreign entities and stated Plaintiff was attempting service under the Hague Convention. D.E. 5 ¶¶ 4–6. Plaintiff subsequently moved for permission to serve Defendants through their respective U.S. counsels in unrelated litigations. D.E. 9 at 6. The district court granted that motion and Plaintiff purported to serve Defendants through counsel by email. D.E. 10, 13.

### 2. Dismissal of the Initial Complaint and Additional Attempts at Service

Defendants made limited appearances reserving all defenses and, following extensions of their time to respond, separately moved to dismiss Plaintiff's initial Complaint. D.E. 13, 15, 17, 20, 21. Pequiven argued that Plaintiff failed to properly serve it, that the district court lacked subject-matter jurisdiction under the FSIA, and

that Plaintiff failed to state a cause of action against it. D.E. 21. Bariven argued in relevant part that the district court lacked personal jurisdiction due to ineffective service. D.E. 17 § III.[2]

Plaintiff sought leave to submit an agreed order granting Defendants' motions to dismiss based on Plaintiff's concededly improper service. D.E. 31 ¶ 6. The parties agreed to, and the district court entered, an order granting the motions to dismiss, affording Plaintiff 60 days to complete service pursuant to the Hague Convention, and stating that the order was "without prejudice to Defendants' ability to reassert the remaining bases for dismissal contained in their Motions to Dismiss." D.E. 34 at 2.

Less than a month later, Plaintiff asked the district court to deem its attempts at service effective. D.E. 35. Plaintiff asserted that it had continued to attempt, but could not complete, service via the Hague Convention, because it had not received a certificate of service from the Venezuelan Central Authority as required by the Convention. *Id.* at 3. Plaintiff therefore asked the district court to find service had

---

[2] Bariven's then-counsel identified Bariven as an "agency or instrumentality" of Venezuela under the FSIA, and thus argued that Bariven was presumptively immune from the court's jurisdiction. D.E. 17 §§ I.B., II. Bariven, however, is not directly owned by Venezuela and therefore does not qualify as an agency or instrumentality of a foreign state under the FSIA. 28 U.S.C. § 1603(b); *see Dole Food Co. v. Patrickson*, 538 U.S. 468, 477 (2003) ("A corporation is an instrumentality of a foreign state under the FSIA only if the foreign state itself owns a majority of the corporation's shares."). Undersigned counsel notified the district court that Bariven no longer contended that the FSIA applies to it. *See* D.E. 145 at 4–5.

been effectuated based on Article 15 of the Hague Convention. *See id.* § a. Plaintiff alternatively asked the district court to authorize service on Defendants by postal channels. *Id.* § b.

The district court referred the motion to the magistrate judge. *See* D.E. 38. The magistrate judge recommended that service not be deemed effected, concluding that Article 15 was inapplicable because it applied only in the default-judgment context and Plaintiff had not moved for a default judgment. D.E. 54 at 7–8. However, notwithstanding Defendant's arguments that such service is not permitted in Venezuela, the magistrate judge recommended that the district court allow Plaintiff to attempt service via postal channels under § 1608(b)(3)(B) of the FSIA based on its finding that service under the Hague Convention had not and could not be made on Defendants. *Id.* at 10.

Defendants timely objected to the finding that service under the Hague Convention could not be made and the recommendation that alternative service via postal channels be permitted. D.E. 55 at 5–8. Plaintiff did not object to the report and recommendation, including the finding that service on Defendants had not been completed. The district court overruled Defendants' objections and affirmed and adopted the report and recommendation. D.E. 59 at 2–4. There is no indication in the record that Plaintiff attempted service by postal channels.

Two days after the district court affirmed the report and recommendation, Plaintiff moved for entry of default under Article 15 of the Hague Convention. D.E. 60.[3] The district court referred this motion to the magistrate judge, D.E. 67, who recommended denying the motion. D.E. 69. The magistrate judge found, among other things, that Plaintiff met the default judgment requirements under Article 15 of the Hague Convention, but a default would be inequitable given the history of the case, particularly where the district court had not determined that service of process had been effected and a ruling on the merits was preferred. *Id.* at 27–32. Additionally, the magistrate judge *sua sponte* recommended that Plaintiff's complaint be dismissed for lack of subject-matter jurisdiction and further recommended, without analysis, authority, or any request from Plaintiff, that Defendants be prohibited from challenging service of any amended complaint because Plaintiff had purportedly met Article 15's requirements. *Id.* at 35. The district court adopted the report and recommendation without objection and dismissed the initial Complaint without prejudice. D.E. 70.

### 3. Amended Complaint and Summary Judgment

On April 27, 2022, Plaintiff filed its Amended Complaint, reasserting the same causes of action against Bariven and Pequiven. D.E. 71. Plaintiff alleged that

---

[3] While the motion was pending, the then-presiding district judge entered an order of recusal and the case was reassigned. D.E. 63, 64.

the district court had jurisdiction as to Plaintiff's action against Pequiven under the third clause of the FSIA's commercial-activity exception, 28 U.S.C. § 1605(a)(2). *Id.* ¶ 7. The Amended Complaint was "served upon interested counsel via CM/ECF," *id.* at 9, but there is no evidence in the record that Plaintiff attempted or achieved service of the Amended Complaint through the Hague Convention procedures or otherwise under the FSIA or Rule 4 of the Federal Rules of Civil Procedure.

Pequiven moved to dismiss the Amended Complaint, which motion the court denied. D.E. 75, 81. Defendants then filed their answers and affirmative defenses. D.E. 82, 84. In their answers, Defendants explained that as a result of the ongoing political crisis in Venezuela, they were unable to access and produce discovery relevant to Plaintiff's claims and Defendants' defenses. *See* D.E. 82 at 4; D.E. 84 at 4.

On February 14, 2023, Plaintiff moved for summary judgment on the contract and account-stated claims against Bariven and the contract claim against Pequiven. D.E. 104.[4] Plaintiff's only evidentiary support for its motion was a declaration with four exhibits from David Avan, Plaintiff's owner. D.E. 104-1. None of the exhibits to the declaration included the purported contract between Plaintiff and Bariven.

_____

[4] Soon thereafter, undersigned counsel appeared for Bariven, D.E. 106–08, 110, and subsequently appeared for Pequiven, D.E. 127–30.

Instead, they included the three unilateral invoices attached to its complaint, *id.* at 5–7; two emails, which were produced for the first time at summary judgment, *id.* at 8–9, 14–15; and the purported contract between Plaintiff and Pequiven and a certified translation, *id.* at 10–12. Plaintiff subsequently confirmed it had not produced the emails during discovery. D.E. 141 at 8–9.

Defendants opposed Plaintiff's motion for summary judgment. D.E. 132. As relevant to this appeal, in opposing Plaintiff's motion, Pequiven again asserted it was immune from jurisdiction under the FSIA and, as a result, the district court lacked subject-matter jurisdiction over Plaintiff's action against Pequiven. *Id.* § I. Among other things, Pequiven argued that Plaintiff had not shown that the commercial-activity exception applied to overcome its presumptive foreign sovereign immunity because the purported guaranty contract was signed by an individual named "Saul Silva" (allegedly Pequiven's "Legal Counsel") who lacked the authority to bind Pequiven. *Id.* § I.A. In support, Pequiven filed a declaration by its Single Administrator, Mr. Bellorin, who had been appointed only two days prior. D.E. 131-7. Mr. Bellorin testified that, under Pequiven's bylaws, which were attached to the declaration, only Pequiven's President, Board of Directors, and Executive Committee had the authority to enter contracts on the company's behalf. *Id.* ¶ 5. Both Defendants also opposed the motion under Rule 56(d) of the Federal Rules of Civil Procedure. D.E. 132 § V.

Because Pequiven had not previously disclosed Mr. Bellorin nor produced the documents attached to his declaration during the discovery period, Plaintiff requested, and Defendants did not oppose, additional time to reply, which request the district court granted. D.E. 134, 135. After filing its reply, Plaintiff moved to strike Mr. Bellorin's declaration and its accompanying documents, including the bylaws, under Rules 26 and 37 of the Federal Rules of Civil Procedure. D.E. 138. In turn, Pequiven sought leave to move *in limine* to exclude the documents relied on in Plaintiff's summary judgment motion but never-before produced. *See* D.E. 142.

While Plaintiff's motion for summary judgment and motion to strike were still pending, the district court denied the *in limine* request, concluding that the motion was a "garden-variety discovery dispute," and Defendants should therefore proceed before the magistrate judge. D.E. 143. Defendants promptly filed a notice of hearing before the magistrate judge, which hearing was set for June 7, 2023. D.E. 146, 148.

Also while Plaintiff's motion for summary judgment and motion to strike were still pending, the district court issued an order to show cause, instructing the parties to provide additional briefing on Pequiven's subject-matter jurisdiction arguments. D.E. 144. In response, Plaintiff for the first time asserted that Pequiven had waived its foreign sovereign immunity by not asserting it as an affirmative defense in its answer. D.E. 150 at 3.

On June 6, 2023, the district court (a) granted Plaintiff's motion as to the contract claims against Pequiven and Bariven, (b) denied the motion as moot as to the account-stated claim against Bariven, (c) excluded Pequiven's evidence under Rule 37(c)(1) of the Federal Rules of Civil Procedure, and (d) rejected Defendants' request under Rule 56(d) that the court deny or defer consideration of the motion. D.E. 153 at 1, 6 n.3, 12. The same day, the magistrate cancelled the discovery hearing regarding Defendants' *in limine* request. *See* D.E. 154.

In granting summary judgment as to Plaintiff's contract claim against Bariven, the district court rejected Bariven's arguments based on the statute of frauds, finding there was no genuine dispute that Bariven "received and accepted" the goods thereby obviating the need for a signed writing. D.E. 153 at 11. The district court also found that Plaintiff presented other evidence of assent through the conduct of the parties. *Id.*

As to Plaintiff's claim against Pequiven, the district court held that it had subject-matter jurisdiction under the FSIA's commercial-activity and waiver exceptions to immunity. *Id.* at 7–10. The district court found that plaintiff had "sufficiently demonstrated" the applicability of the commercial-activity exception "through [its] allegations" to shift the burden to Pequiven prove that the exception did not apply. *Id.* at 8. After excluding Pequiven's evidence, the district court held that Pequiven had put forward no evidence and therefore had failed to carry its

burden. *Id.* at 6 n.3, 9. The district also found that even if it were to consider the excluded evidence, "the bylaws explicitly provide for the delegation of authority." *Id.* at 9–10. The district court further held that Pequiven had implicitly waived its immunity based on the omission of sovereign immunity in its answer and its participation in the litigation thereafter. *Id.* at 8–9. On the merits, the district court held that Plaintiff satisfied its burden to prove its contract claim against Pequiven based in part on the documents Plaintiff produced for the first time at summary judgment. *Id.* at 5.

On June 16, 2023, the district court entered Final Judgment, ordering Defendants be jointly and severally liable for $15,111,440.00; Bariven be responsible for $307,155.66 in pre-judgment interest, and post-judgment interest; and that Pequiven be responsible for $8,272,933.00, and post-judgment interest. D.E. 159. Defendants timely filed their notices of appeal on June 23, 2023. D.E. 160, 161.

## STANDARD OF REVIEW

This Court reviews *de novo* questions of law concerning service of process. *Prewitt Enters. v. O.P.E.C.*, 353 F.3d 916, 920 (11th Cir. 2003). This Court reviews a district court's legal determination concerning subject-matter jurisdiction under the FSIA *de novo* and factual findings for clear error. *Calzadilla v. Banco Latino Internacional*, 413 F.3d 1285, 1287 (11th Cir. 2005). This Court reviews a district

court's grant of summary judgment *de novo*. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994). Abuse of discretion governs the review of a denial of a Rule 56(d) motion and the district court's exclusion of evidence under Federal Rule of Civil Procedure 37(c). *Jones v. City of Columbus*, 120 F.3d 248, 251 (11th Cir. 1997) (Rule 56(d) motion); *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019) (Rule 37(c) motion).

## SUMMARY OF THE ARGUMENT

1. The Final Judgment is void for lack of personal jurisdiction due to Plaintiff's failure to effect proper service on Defendants. As to Pequiven, Plaintiff was required to effect service pursuant to the hierarchical methods prescribed by § 1608(b) of the FSIA. As to Bariven, Plaintiff was required to effect service under Rule 4(h)(2) of the Federal Rules of Civil Procedure. Here, both the FSIA and Rule 4 required Plaintiff to effect service under the Hague Convention, but as Plaintiff conceded, and the district repeatedly found, it never completed service under the Hague Convention. Nor did Plaintiff properly effect service by any other method provided for in the FSIA or Rule 4. As a result, the district court never obtained personal jurisdiction over Defendants and committed reversible legal error by nevertheless proceeding to enter summary judgment against them.

2. The Final Judgment is void for lack of subject-matter jurisdiction as to Pequiven. Under the FSIA, Pequiven is presumptively immune from jurisdiction in

U.S. courts. To obtain subject-matter jurisdiction as to Plaintiff's action against Pequiven, Plaintiff was required to establish that one of the FSIA's enumerated exceptions applied. In the operative complaint, Plaintiff alleged subject-matter jurisdiction under the third clause of the commercial-activity exception, 28 U.S.C. § 1605(a)(2), and later asserted that Pequiven had implicitly waived its immunity under §1605(a)(1). The district court committed reversible legal error by concluding Plaintiff had established both exceptions applied and abused its discretion by excluding Pequiven's evidence to the contrary. The commercial-activity exception cannot apply because Plaintiff failed to establish (1) the purported agreement was made by an agent of Pequiven acting with requisite authority; (2) the purported agreement was a valid, binding contract; or (3) any direct effect in the United States. And the implicit waiver exception cannot apply because Pequiven asserted its foreign sovereign immunity and its litigation conduct did not reflect a clear intent to waive its immunity.

3. The district court's grant of summary judgment was based on legal and factual errors that require reversal. Under Florida's statute of frauds, Fla. Stat. § 672.201(1), to succeed on its contract claim against Bariven, Plaintiff was required to produce a writing signed by Bariven. Plaintiff produced no such writing and thus failed to carry its burden as a matter of law. Plaintiff also failed to carry its burden as to its contract claim against Pequiven. The record reflects a triable dispute as to

whether the alleged agreement was executed by an agent of Pequiven acting with requisite authority and whether the agreement was supported by consideration — both essential for a contract to be valid, binding, and enforceable under Florida law.

4. The district court abused its discretion and deprived Defendants of their due process rights by refusing to deny or defer summary judgment to permit Defendants to obtain facts essential to justify their opposition. *See* Fed. R. Civ. P. 56(d). The illegitimate Maduro regime's ongoing unlawful control of Defendant's offices, records, and personnel in Venezuela has made it impossible for Defendants to obtain evidence relevant to Plaintiff's claims and Defendants' defenses.

## **ARGUMENT**

## I. THE DISTRICT COURT'S JUDGMENT IS VOID FOR LACK OF PERSONAL JURISDICTION DUE TO PLAINTIFF'S FAILURE TO EFFECT PROPER SERVICE

Without proper service, a court lacks personal jurisdiction over any defendant, including as to a foreign state defendant. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1053–54 (2019) ("The FSIA also provides for personal jurisdiction 'where service has been made under section 1608.'" (quoting 28 U.S.C. § 1330(b)). And a judgment issued without personal jurisdiction and proper service is a legal nullity. *See De Gazelle Grp., Inc.*

*v. Tamaz Trading Establishment*, 817 F.3d 747, 751 (11th Cir. 2016) (reversing order as void for lack of service of process); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1368 (11th Cir. 1982) (holding that judgment was void because complaint had not been properly served). Here, because Plaintiff never served either Defendant as required by applicable rules, the district court lacked jurisdiction to issue any judgment binding Defendants.

## A.    Plaintiff Failed to Properly Serve Pequiven Under the FSIA

The FSIA articulates exclusive, mandatory procedures for serving process on foreign states and their agencies or instrumentalities. *See* 28 U.S.C. §§ 1608(a)–(b); Fed. R. Civ. P. 4(j)(1) ("A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. §1608."); *Harrison*, 139 S. Ct. at 1062 (holding Plaintiff's failure to strictly comply with FSIA's service provisions required vacatur of default judgment against foreign state). Because Pequiven is an "agency or instrumentality of a foreign state," as that phrase is defined under § 1603(b), Plaintiff was required (but failed) to effect service under § 1608(b).

Section 1608(b) sets out three hierarchical methods by which service can be accomplished: (1) "in accordance with any special arrangement for service" between the parties; (2) on an "agent authorized by appointment or by law to receive service of process in the United States" or "in accordance with an applicable international convention on service of judicial documents"; or (3) "if reasonably calculated to give

actual notice," service (A) by letter rogatory, (B) by mailing requiring a signed receipt and "dispatched by the clerk of court," or (C) "as directed by order of the court consistent with the law of the place where service is to be made." 28 U.S.C. §§ 1608(b)(1), (2), (3)(A)–(C); *see Commodities & Mins. Enter. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 812 (2d Cir. 2022) (stating § 1608(b) "provides a series of cascading alternatives"); *see also Harrison*, 139 S. Ct. at 1054 (stating § 1608(a) sets out methods of service "in hierarchical order").

Plaintiff conceded that the correct starting point for service on Pequiven was § 1608(b)(2) and the Hague Convention because there is no applicable "special arrangement" for service and the Convention is "an applicable international convention on service of judicial documents" to which the United States and Venezuela are both parties. 28 U.S.C. § 1608(b)(1), (2); *see also* D.E. 35 at 5. As an international treaty, the Hague Convention "pre-empts inconsistent methods of service." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). And compliance with its provisions is "mandatory" in all cases in which it applies. *Id.*

For service in Venezuela, the Hague Convention requires that a plaintiff must send two sets of the service package with Spanish-language translations to Venezuela's Central Authority. *See* Venezuela, U.S. Department of State – Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/legal/Judicial-

Assistance-Country-Information/VenezuelaBolivarianRepublicof.html.   Service is

complete only when the Central Authority returns the required certificate reflecting

service was made.  *See* Hague Convention Art. 6; *Saint-Gobain Perf. Plastics Eur.*

*v. Bolivarian Republic of Venezuela*, 23 F.4th 1036, 1041 (D.C. Cir. 2022) (holding

service under Hague Convention ineffective for failure to receive certificate from

Central Authority).  If the Central Authority does not provide a certificate reflecting

service was made, a court may enter judgment only if the requirements of Article

15, paragraph two are met.  Hague Convention Art. 15, ¶ 2; *see Saint-Gobain*, 23

F.4th at 1039 (explaining Article 15).

Although Plaintiff apparently sent its summons and initial complaint to

Venezuela's Central Authority, Plaintiff did not complete service because it never

received the required certificate from Venezuela's Central Authority.  In fact, the

district court (correctly) recognized as much on multiple occasions.  *See e.g.*, D.E.

69 at 29–30, *adopted by* D.E. 70.

Having failed to serve Pequiven under the Hague Convention, Plaintiff sought

and was erroneously permitted to serve Pequiven via postal channels under

§ 1608(b)(3)(B).  *See* D.E. 59 at 1, 3.  But Venezuela expressly exercised its right

under Article 10 of the Hague Convention to object to service through postal

channels.  *See* Decl. 3,  https://www.hcch.net/en/instruments/conventions/status-

table/notifications/?csid=429&disp=resdn ("The Republic of Venezuela does not

agree to the transmission of documents through postal channels."); Hague Convention Art. 10 (providing for service by mail "[p]rovided the State of destination does not object"). The Supreme Court has held that, in cases governed by the Hague Convention, service by postal channels is permissible only "if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise applicable law." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017). The district court had "no power to insert an amendment" to authorize a method of service forbidden by the text of the Hague Convention. *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134 (1989); *see Saint-Gobain*, 23 F.4th at 1041.

Even if the district court's order were not erroneous, Plaintiff *never even attempted* service by postal channels. *See* D.E. 69 at 15. And Plaintiff never made any subsequent attempts to serve Pequiven under § 1608(b). Instead, in *sua sponte* dismissing Plaintiff's complaint for lack of subject-matter jurisdiction, the court ordered, without any legal analysis, that, following Plaintiff's filing of an amended complaint, Defendants were "not . . . permitted to challenge service of process since Plaintiff has met the requirements of Article 15, paragraph two." D.E. 69 at 35, *adopted by* D.E. 70. Plaintiff thereafter purported to serve its Amended Complaint under Rule 5 of the Federal Rules of Civil Procedure by having it "served upon interested counsel via CM/ECF," after which the district court proceeded to the

merits without ever examining whether service was properly effected. D.E. 71 at 9; *see also* Fed. R. Civ. P. 5(b)(2)(E). But electronic service on counsel is not authorized by Rule 4(j)(1) or § 1608(b) and is thus not proper service. *Cf. Varnes*, 674 F.2d at 1368–69 (holding Rule 5(a)(2) required amended complaint stating new basis for relief "be served on parties in default for failure to appear in the manner provided by Rule 4"). As a result, Plaintiff never properly served Pequiven and, therefore, the Final Judgment is void under the FSIA for lack of personal jurisdiction. *See Harrison*, 139 S. Ct. at 1054.

### B. Plaintiff Failed to Properly Serve Bariven Under Rule 4(h)(2)

Because Bariven is a Venezuela-based corporation, *see* D.E. 71 ¶ 5, it must be served under Rule 4(h)(2), which points to Rule 4(f) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 4(h)(2). In turn, Rule 4(f) provides (1) for service "by any internationally agreed means," (2) by additional means of service only "if there is no internationally agreed means," and (3) by alternative means ordered by the court and "not prohibited by international agreement." *Id.* 4(f)(1)–(3).

As the district court found — and Plaintiff did not dispute — Plaintiff never completed service under the Hague Convention. *See* D.E. 59 at 3 (finding Plaintiff attempted Hague Convention service "without success"); D.E. 69 at 29 (noting the district court "has <u>twice</u> determined that service of process has not been effectuated

on Defendants").  Nevertheless, the district court erroneously authorized Plaintiff to effect service by postal channels.  D.E. 59 at 4.

As explained above, service by mail is not an available means of service on a Venezuelan entity in light of Venezuela's express objection to such service.  *See supra* § I.A.  Regardless, it is undisputed that Plaintiff never actually attempted to serve Bariven by postal channels pursuant to the district court's legally erroneous order.  And the record shows that Plaintiff failed to make any further attempts at service on Bariven under Rule 4.  Absent effective service, personal jurisdiction was never established, thus rendering the grant of summary judgment and the Final Judgment as to Bariven void.

## II.  THE DISTRICT COURT'S FINAL JUDGMENT IS VOID FOR LACK OF SUBJECT-MATTER JURISDICTION AS TO PEQUIVEN UNDER THE FSIA

### A.  The District Court Erred in Holding that Plaintiff Established that the Commercial-Activity Exception Overcame Pequiven's Foreign Sovereign Immunity

The FSIA provides the "sole basis" for subject-matter jurisdiction over actions against foreign sovereigns and their agencies and instrumentalities in U.S. courts. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Under the FSIA, Pequiven is presumptively "immune from the jurisdiction of the courts of the United States," 28 U.S.C. § 1604, unless Plaintiff "show[s] (and not just arguably show[s])" that one of the enumerated exceptions to sovereign

immunity in §§ 1605 to 1607 applies. *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 187 (2017); *see also Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).

This Court's applies a two-step framework for evaluating subject-matter jurisdiction under the FSIA. First, once a defendant asserts its sovereign status, "the *plaintiff* must overcome the presumption that the foreign state is immune from suit by producing evidence that the conduct which forms the basis of the complaint falls within one of the statutorily defined exceptions." *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312–13 (11th Cir. 2009) (emphasis added) (cleaned up); *see Sequeira v. Republic of Nicaragua*, 815 F. App'x 345, 348–49, 352 (11th Cir. 2020) (affirming dismissal where plaintiff failed to show that any FSIA exception applied). Second — and only if the plaintiff puts forth such evidence — the burden shifts back to the defendant to show that the FSIA exception in question does not apply. *Butler*, 579 F.3d at 1313.

As an initial matter, this burden-shifting framework has been "undermined to the point of abrogation" by recent Supreme Court precedent. *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013). In *Helmerich*, the Supreme Court explained that, "as a jurisdictional matter," a plaintiff must "prove" each statutory element of any FSIA exception on which it purports to rely. 581 U.S. at 178 (addressing the expropriation exception to the FSIA). This is consistent with the

ordinary rule that "the party asserting federal jurisdiction when it is challenged has the burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006); *see also Broidy Cap. Mgmt. v. Benomar*, 944 F.3d 436, 444 (2d Cir. 2019) (applying the "usual rule[]" that plaintiff bears burden of proving subject-matter jurisdiction in context of diplomatic immunity).  Moreover, as the United States Department of State has urged, a burden-shifting framework is "inconsistent with the text of the FSIA."  Br. of U.S. Dep't of State as Amicus Curiae 17, *Broidy Cap. Mgmt. v. Benomar*, No. 19-236, ECF No. 71 (2d Cir. Oct. 9, 2019).  Because "foreign sovereign immunity is not an affirmative defense, there is no reason to rest the ultimate burden of proving immunity with the foreign state."  *Id.* (quotation marks omitted); *see also Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 n.20 (1983) (rejecting statement in FSIA's legislative history that foreign sovereign immunity is affirmative defense).

Regardless, Plaintiff failed to carry its initial burden of showing that a FSIA exception applied and the district court therefore erred in holding that it had subject-matter jurisdiction.  Specifically, Plaintiff alleged that the court had jurisdiction over its action against Pequiven based on the third clause of the commercial-activity exception contained in § 1605(a)(2) of the FSIA.  D.E. 71 ¶ 7.  In order to establish that exception at the summary judgment stage, Plaintiff was required to produce sufficient evidence that its action was based upon (1) an "act [of Pequiven] outside

the territory of the United States," (2) taken "in connection with a commercial activity of" Pequiven; that (3) caused a "direct effect in the United States." 28 U.S.C. § 1605(a)(2). Plaintiff failed establish any of these elements as explained below.

1. **Plaintiff Failed to Establish Its Action is Based Upon an Act of Pequiven**

The FSIA makes clear that, to support jurisdiction under the commercial-activity exception, the alleged "commercial activity must be that '*of the foreign state*.'" *Dale v. Colagiovanni*, 443 F.3d 425, 428 (5th Cir. 2006) (emphasis in original) (quoting 28 U.S.C. § 1605(a)(2)); *see also Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 307 (9th Cir. 1997) ("Commercial activity of the foreign state clearly entails commercial activity in which the foreign state engaged." (cleaned up)). Accordingly, Plaintiff was required to put forward sufficient evidence that the alleged failure to make payment under the purported guaranty agreement was an act "by" or "of" Pequiven. 28 U.S.C. § 1605(a)(2). And because "a foreign state acts through its agents," *Phaneuf*, 106 F.3d at 307; *Dale*, 443 F.3d at 428, that means that Plaintiff was required to produce evidence that Pequiven's purported "agent," "Saul Silva," was in fact an agent of Pequiven who acted with requisite authority. D.E. 104-1 ¶¶ 10–12; *see CapitalKeys, LLC v. Democratic Republic of Congo*, 2022 WL 2902083, at *4 (D.C. Cir. July 22, 2022) (affirming dismissal for lack of subject matter-jurisdiction where purported agent's authority to act was not established to support FSIA exceptions).

When resolving such a "question of agency" in the context of a federal statute, this Court has held that "the Restatement of Agency is a useful beginning point for a discussion of general agency principles." *GDG Acquisitions LLC v. Government of Belize*, 849 F.3d 1299, 1308 (11th Cir. 2017) (cleaned up). At the time of the FSIA's enactment in 1976, the relevant restatement was the Restatement (Second) of Agency. *See generally* Restatement (2d) of Agency (Am. L. Inst. 1958); *Samantar v. Yousuf*, 560 U.S. 305, 322 n.13 (2010) (interpreting FSIA based on "presumption that Congress intended to retain the substance of the common law"). Under the Restatement, a principal-agent relationship is formed by "the manifestation of consent by one person [(the principal)] to another [(the agent)] that the [the agent] shall act on [the principal's] behalf and subject to [the principal's] control, and consent by the [agent] so to act." Restatement (2d) of Agency § 1; *see also* Restatement (3d) of Agency § 1.01 (Am. L. Inst. 2006) (similar). A principal is liable on a contract made by an agent only if the agent (a) "was authorized," (b) "was apparently authorized," or (c) "had a power arising from the agency relation and not dependent upon authority or apparent authority." Restatement (2d) of Agency § 140.

The Fourth, Fifth, and Ninth Circuits have held that, for purposes of jurisdiction under the FSIA, only actual authority suffices. *See Velasco v. Government of Indonesia*, 370 F.3d 392, 400 (4th Cir. 2004); *Phaneuf*, 106 F.3d at

308; *Dale*, 443 F.3d at 429. This accords with the common law rule that "[t]he doctrine of apparent authority generally does not apply to sovereigns and entities that have been created by sovereigns to achieve governmental ends." Restatement (3d) of Agency, § 2.03, cmt. g.

On the other hand, this Court has joined the Second Circuit in holding that an ambassador may bind a foreign sovereign under the FSIA by acting with apparent authority. *See Aquamar S.A. v. Del Monte Fresh Produce N.A.*, 179 F.3d 1279, 1299 (11th Cir. 1999); *First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission*, 877 F.2d 189, 193 (2d Cir. 1989). The reasoning of *Aquamar*, however, turned on "the unique qualities and powers of an ambassador." *GDG Acquisitions*, 849 F.3d at 1307. This Court therefore held that *Aquamar*'s apparent-authority analysis does not pertain in cases that "do[] not involve the acts of an ambassador." *Id.*; *but see Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1227 (11th Cir. 2018) (appearing, in dicta, to interpret *Aquamar* more broadly as suggesting that apparent authority also sufficed for foreign government officials other than ambassadors).

But even if apparent authority were enough, Plaintiff's only evidence that Saul Silva was Pequiven's agent was the bare description in Mr. Avan's declaration and the recitation in the alleged agreement that "Saul Silva" was Pequiven's "Legal Counsel." D.E. 104-1 ¶ 12; *id.* at 11. Far from carrying Plaintiff's burden, Plaintiff's

evidence creates serious questions about whether a fact-finder could reasonably conclude that Saul Silva was acting as Pequiven's authorized agent, particularly in light of the well documented history of "massive corruption through state-owned enterprises . . . and offshore third-parties" under the illegitimate Maduro regime. U.S. Dep't of the Treas., Fin. Crimes Enforcement Network, *Updated Advisory on Widespread Public Corruption in Venezuela*, FIN-2019-A002 (May 3, 2019) (available at https://www.fincen.gov/sites/default/files/advisory/2019-05-03/ Venezuela%20Advisory%20FINAL%20508.pdf). For instance, the email purportedly evidencing Mr. Avan's meeting with Saul Silva was apparently sent from a pequiven.com email address associated with Jovel Alvarez to Mr. Avan and a number of gmail.com email addresses, including one apparently for Jovel Alvarez, none of which appears to be associated with a person named "Saul Silva." D.E. 104-1 at 8–9. And Mr. Alvarez's email signature block states that he is "Manager of Planning and Market Intelligence International Trade of Pequiven," but omits any contact information, logos, or insignia. *Id.* at 9. Moreover, the alleged agreement itself lacks indicia of legitimacy, such as a letterhead, seal, key price terms, or even a date and reflects that "Saul Silva" was signing for "PEQUIVEN, S.A," which is neither Pequiven's name (Petroquímica de Venezuela, S.A.) nor a defined term in the agreement. *Id.* at 10. Plaintiff also adduced a forwarded email, with the original sender's address redacted, reflecting an approximately $3 million payment

purportedly sent by Pequiven in Venezuela but originated from a bank in Puerto Rico. *Id.* at 14–15.

Thus, unlike the extensive, credible evidence of authority in *Aquamar*, *GDG Acquisitions*, and *Devengoechea*, Plaintiff's evidence here was not sufficient to shift the burden to Pequiven. *See Aquamar*, 179 F.3d at 1300 (holding express waiver of foreign sovereign immunity by ambassador effective based in part on affidavit of President of Ecuador stating that the ambassador "had been authorized to act as he did"); *GDG Acquisitions*, 849 F.3d at 1309 (holding express waiver of foreign sovereign immunity by Minister of Budget Management effective where "undisputed and unambiguous facts found in the record indicate that the Government made forty payments" on the alleged contract); *Devengoechea*, 899 F.3d at 1227–28 (finding actual authority sufficiently alleged at motion-to-dismiss stage where the Coordinator General of the Office of Vice President of Venezuela participated in meetings with plaintiff, Venezuela provided a letter of introduction to facilitate plaintiff's passport application, and Venezuela provided a state-owned jet to transport plaintiff).

Importantly, Plaintiff put forward *no* evidence reflecting "some conduct by" Pequiven that "reasonably interpreted, cause[d Plaintiff] to believe that [Pequiven] consent[ed]" to the actions of "Saul Silva." Restatement (2d) of Agency § 27; *see First Fid. Bank*, 877 F.2d at 193 (stating "decision whether apparent authority

exists . . . requires a factual inquiry into *the principal's manifestations to third persons*" and whether plaintiff had "fulfilled his 'duty of inquiry'" (emphasis added)); *Velasco*, 370 F.3d at 400 n.3 ("Apparent authority depends upon some conduct by the principal, communicated to a third party, that reasonably causes the third party to believe that the agent has authority to conduct a particular transaction").

Moreover, Pequiven's evidence clearly established that "only the President, Board of Directors and the Executive Committee of Pequiven had the authority to authorize contracts." D.E. 131-7 ¶ 5; *see id.* at 30 (ch. IV, cl. 20), 31 (ch. V, cl. 28) & 32 (ch. VII, cl. 30). Pequiven thus created a triable dispute as to authority that precluded a finding of jurisdiction and entry of summary judgment. *See Helmerich*, 581 U.S. at 174 (stating that factual disputes that go to jurisdiction may be ultimately resolved at "the merits phase of the litigation"); *accord Brownback v. King*, 141 S. Ct. 740, 749 (2021) (quoting *Helmerich* for the proposition that, in cases involving sovereign immunity "the 'merits and jurisdiction will sometimes come intertwined,' and a court can decide 'all of the merits issues' in resolving a jurisdictional question, or vice versa" (cleaned up)).

Plaintiff therefore failed to overcome its initial burden of showing that a FSIA exception applies. *See Butler*, 579 F.3d at 1313.

But even if Plaintiff had succeeded in shifting its burden, Pequiven easily would have carried its ultimate burden of persuasion, as its evidence demonstrated that Mr. Silva had no such authority. The district court abused its discretion in declining to consider that evidence where it found that Pequiven had "failed to disclose" Mr. Bellorin's testimony and the associated documents, D.E. 153 at 6 n.3 (citing Rule 37(c)(1)), because Pequiven's failure was "substantially justified [and] harmless," and because, even had it not been, lesser sanctions were available. Fed. R. Civ. P. 37(c)(1); *see OFS Fitel, LLC v. Epstein*, 549 F.3d 1344, 1365 (11th Cir. 2008) (reversing exclusion of evidence where party had "substantial justification for its conduct"); *Taylor v. Mentor Worldwide, LLC*, 940 F.3d 582, 593 n.6 (11th Cir. 2019) (holding disclosures were harmless where opposing party was given more time to address evidence). The district court compounded its abuse of discretion by refusing even to consider Pequiven's challenge to Plaintiff's reliance on evidence not produced in discovery (apparently without good cause) before entering the summary judgment order. *See* D.E. 143 (denying Defendants' motion *in limine*, directing Defendants to bring the dispute to the magistrate judge who decided the motion was moot in view of the summary judgment grant).

Pequiven could not disclose Mr. Bellorin during the discovery period because he was appointed as the Single Administrator of Pequiven *two days* before he was identified in Pequiven's summary-judgment filings. *See* D.E. 140 at 3–12. And

Pequiven's failure to produce the bylaws during the discovery period was a product of the ongoing political crisis in Venezuela. *See generally*, D.E. 93. Moreover, Pequiven readily agreed to, and the district court granted, an extension of time for Plaintiff to file its reply in support of its motion for summary judgment so that it could address Pequiven's evidence. D.E. 135.

All told, Plaintiff failed to carry its burden of production to show an "act" by Pequiven to establish subject-matter jurisdiction under the commercial-activity exception.

### 2. Plaintiff Failed to Establish "Commercial Activity"

To show that its claim is "based upon . . . commercial activity," 28 U.S.C. § 1605(a)(2), Plaintiff was required, but failed, to show that "the particular conduct on which the [plaintiff's] action is 'based'" — "the conduct constituting the gravamen of [the] suit" — is commercial in nature. *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 33, 35 (2015). For the theory of liability in the Amended Complaint to satisfy this requirement, Plaintiff would need to show that the agreement was a valid, binding contract. *See Sequeira*, 815 F. App'x at 350 (finding that waiver exception to FSIA did not apply when the contract at issue was found to be inauthentic); *CapitalKeys*, 2022 WL 2902083, at *4 (holding absent proof of a valid contract, "neither the contract nor the alleged default amount to commercial activity"). Plaintiff failed to establish any "commercial activity" of Pequiven.

*First*, as described above, § II.A.1, Plaintiff failed to establish that Saul Silva had authority to bind Pequiven.  In fact, he did not, and the agreement, therefore, is not a binding contract enforceable against Pequiven.  *See Landcastle Acquisition Corp. v. Renasant Bank*, 57 F.4th 1203, 1233 (11th Cir. 2023) (stating contract formed by agent without authority "is voidable at the option of the principal").

*Second*, even assuming Saul Silva had authority to bind Pequiven, Plaintiff failed to prove that the agreement was supported by consideration, an essential element of a contract.  *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp.*, 162 F.3d 1290, 1311 (11th Cir. 1998) ("It is a fundamental principle of contract law that a promise is not enforceable unless it is supported by consideration.") (citing Restatement (2d) of Contracts § 17 (1981)).  To prove consideration, Plaintiff was required to establish either that Pequiven benefited from, or Plaintiff suffered a detriment due to the alleged agreement.  *See* Restatement (2d) of Contracts § 79 (recognizing consideration may be found where there is a benefit or legal detriment); 11 Fla. Jur. 2d Contracts § 84 (same).  Plaintiff proved neither.

Plaintiff made no attempt to establish that Pequiven received a direct benefit in exchange for its supposed promise to repay Bariven's debt and instead simply asserted that "Pequiven voluntarily assumed the debt owed by Bariven."  D.E. 104 at 6–7.  The district court nevertheless found consideration existed based on its misunderstanding that "Pequiven is Bariven's parent company."  D.E. 153 at 6.  That

finding was clearly erroneous because Plaintiff never alleged, let alone showed, that "Pequiven is Bariven's parent company." *Id.* As Plaintiff alleged, and the district court previously recognized, *PDVSA* is Bariven's parent, not Pequiven. *See* D.E. 71 ¶ 5; D.E. 81 at 2. The district court's reliance on an incorrect material fact is reversible error. *See Arrington v. Cobb Cnty.*, 139 F.3d 865, 875–76 (11th Cir. 1998) (reversing summary judgment in part because the district court committed factual errors); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (recognizing when alleged facts are "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

Plaintiff also failed to show it suffered any prejudice in entering the supposed agreement with Pequiven. According to Plaintiff, the terms of the purported agreement contemplate full repayment of Bariven's debt by Pequiven, and Plaintiff maintained the agreement did not relieve Bariven of any obligation to repay. *See* D.E. 71 ¶ 13; D.E. 104 at 8–9. Thus, under Plaintiff's theory, Plaintiff suffered no detriment because of the alleged agreement and only benefited by adding another entity from which it could recover. In short, Plaintiff lacked evidence to establish the "commercial activity" necessary for subject-matter jurisdiction.

**3.** **Plaintiff Failed to Establish a "Direct Effect in the United States"**

Plaintiff was required, but failed, to establish its claim is "based upon" commercial activity by Pequiven that "cause[d] a direct effect in the United States." 28 U.S.C. § 1605(a)(2). An effect is "direct" if it follows as "an immediate consequence of the defendant's activity." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992); *United World Trade v. Mangyshlakneft Oil Prod. Ass'n*, 33 F.3d 1232, 1238 (10th Cir. 1994) (same). "There can be no intervening elements, and the effect must 'flow[] in a straight line without deviation or interruption' from the defendants' activity." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 106 (D.D.C. 2005) (citation omitted).

To establish such "direct effect," therefore, Plaintiff had to show that Pequiven's alleged non-payment under the purported agreement had "an immediate consequence" in the United States. *Weltover*, 504 U.S. at 618. This required a showing that, under the alleged agreement, monies or goods were due in the United States. *See Samco Global Arms, Inc. v. Arita*, 395 F.3d 1212, 1217 (11th Cir. 2005) (finding no direct effect when "no monies or goods were due in the United States"); *Bhattacharya v. State Bank of India*, 70 F.4th 941, 944 (7th Cir. 2023) (stating plaintiff is required to adduce "language in the agreement that designates the United States as a site for performance [of a] contract" to carry burden as to direct effect); *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 136 (2d Cir. 2022) (holding checks that did

not "designate the United States as a place of payment" did not satisfy direct-effect requirement).

Plaintiff presented no evidence that payment or goods were due in the United States. Indeed, besides missing other key terms, the purported agreement lacks any information about the place of payment. D.E. 104-1 at 11–12.

And even if payment had been required in the United States, Pequiven's purported failure to pay cannot constitute a direct effect. *See Guevara v. Republic of Peru*, 608 F.3d 1297, 1309–10 (11th Cir. 2010) (rejecting argument that failure to make payment in the United States satisfies jurisdictional requirements of § 1605(a)(2)). "Mere financial loss by a person—individual or corporate—in the U.S. is not, in itself, sufficient to constitute a 'direct effect.'" *Araya-Solorzano v. Government of Republic of Nicaragua*, 562 F. App'x 901, 904 (11th Cir. 2014) (quoting *Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 726–27 (9th Cir. 1997)).

For all of these reasons, Plaintiff failed to establish a "direct effect" and the commercial-activity exception therefore cannot apply.

### B. The District Court Erred in Concluding that Pequiven's Litigation Conduct Implicitly Waived Its Foreign Sovereign Immunity

Plaintiff raised the FSIA's waiver exception for the first time in its response to the district court's Order to Show Cause and the court should therefore have disregarded it. *See Sequeira*, 815 F. App'x at 351 (holding plaintiff could not rely on FSIA exception not alleged in operative complaint). The FSIA's waiver

exception provides for subject-matter jurisdiction where "the foreign state has waived its immunity either explicitly or by implication," 28 U.S.C. § 1605(a)(1), but this exception is "narrow." *Calzadilla*, 413 F.3d at 1287; *see also Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari*, 12 F.3d 317, 325 (2d Cir. 1993) ("Federal courts have been virtually unanimous in holding that the implied waiver provision of Section 1605(a)(1) must be construed narrowly."). Courts will find a waiver only based upon a showing of the foreign state's clear "intent to waive its immunity." *Calzadilla*, 413 F.3d at 1287. Pequiven demonstrated no such intent and the district court therefore erred in its ruling to the contrary. *See* D.E. 153 at 9.

Pequiven's filings up to and including its first responsive pleading manifested a clear intent to preserve all of its defenses, including its foreign sovereign immunity. *See* D.E. 13 ¶ 6; D.E. 17 at 1 n.1; *see generally* D.E. 21. The parties then agreed to, and the district court entered, an order expressly preserving all of Pequiven's defenses. *See* D.E. 34 at 2. And Pequiven again asserted its foreign sovereign immunity at the summary-judgment phase and when the district court ordered separate briefing on the issue. *See* D.E. 132, 133, 149. Despite this litany of filings reflecting Pequiven's clear intent to assert, rather than waive, its immunity, the district court concluded that the omission of sovereign immunity as an affirmative defense in Pequiven's answer to the Amended Complaint and its participation in the litigation was sufficient to waive immunity. D.E. 153 at 8.

Given the "reticence to find a waiver from the nature of a foreign state's participation in litigation," courts have repeatedly found that the failure to raise foreign sovereign immunity in a responsive pleading does not constitute a waiver. *Frovola v. Union of Soviet Socialist Republics*, 761 F.2d 370, 378 (7th Cir. 1985); *see also, e.g.*, *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 696 (D.C. Cir. 2022) (holding no waiver where immunity was raised for first time after trial).

Indeed, the cases on which the district court relied undermine its conclusion that Pequiven waived its immunity. For example, in *Drexel*, the Second Circuit concluded that "the filing of a responsive pleading is the last chance to assert FSIA immunity if the defense *has not been previously asserted*." 12 F.3d at 326 (emphasis added). And in *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, the Second Circuit rejected a waiver argument when the defendant participated in the litigation because the plaintiff had "full notice" that the defendant "reserved the defense." 727 F.2d 274, 278 (2d Cir. 1984). This Court should reverse.

## III. THE DISTRICT COURT ERRED IN FINDING PLAINTIFF MET ITS SUMMARY JUDGMENT BURDEN

As the moving party and the party with the burden of proof at trial, Plaintiff was required to establish "affirmatively the absence of a genuine issue of material fact," on each element of its claim, supported by "credible evidence," such that Plaintiff would be entitled "to a directed verdict . . . at trial." *United States v. Four Parcels of Real Prop. In Greene & Tuscaloosa Counties in State of Ala.*, 941 F.2d

1428, 1438 (11th Cir. 1991) (en banc).  Plaintiff did not satisfy this burden on either of its contract claims and the district court erred in concluding otherwise.

## A. Plaintiff Failed to Carry Its Burden on Its Contract Claim as to Bariven

Plaintiff's failure to adduce a signed written contract as required under Florida's statute of frauds prevented Plaintiff from proving the existence of an enforceable contract as to Bariven.  Specifically, Florida's statue of frauds provides:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is *some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker*.  A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Fla. Stat. § 672.201(1) (emphasis added).  Such writing was required because the alleged contract was for the sale of goods and exceeded $500.  *See* D.E. 71 ¶ 9.

Rather than produce a signed writing, Plaintiff's documentary evidence consisted of invoices Plaintiff itself prepared, two communications purportedly involving a different party (Pequiven), and an alleged guaranty agreement between Plaintiff and Pequiven.  *See* D.E. 153 at 11.

None of this was sufficient under Florida's statute of frauds.  First, the district court correctly recognized that the invoices — the only direct documentary evidence purportedly involving Bariven — did not satisfy the statute of frauds.  D.E. 153 at

42

11.   And for good reason: those invoices were unsigned, issued by Plaintiff unilaterally, and reflect that the goods were "sold to" Bariven "C/O PDVSA Services, B.V." at PDVSA Services B.V.'s address in the Netherlands.   That the invoices provide PDVSA Services, B.V.'s address in the "sold to" field raises, at minimum, a genuine issue of material fact as to whether PDVSA Services, B.V., not Bariven, contracted with Plaintiff.

Ignoring the material questions the invoices raised, the district court held that Plaintiff satisfied the statute of frauds through a "combin[ation]" of evidence that showed Bariven's "mutuality of assent," thereby obviating the need for a signed writing.  D.E. 153 at 11.  But mutuality of assent, absent a writing, is insufficient to satisfy Florida's statute of frauds.  *See Conner, I, Inc. v. Walt Disney Co.*, 827 So. 2d 318, 319 (Fla. 5th DCA 2002) (recognizing a contract for "sale of goods for more than $500 . . . must be in writing to be enforceable").  And even if it were, Plaintiff's other documentary evidence — the emails involving Plaintiff *and Pequiven* and the purported contract between Plaintiff *and Pequiven* — do not reflect *Bariven*'s assent to a contract.  *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (holding that plaintiff bears the burden of acceptance, assent, and non-payment to establish breach of contract).

The district court's error on this score stems, in part, from its misattribution of Pequiven's alleged acts to Bariven based on its misunderstanding that Bariven

and Pequiven shared a parent-subsidiary relationship. *See* D.E. 153 at 11 (relying on "the partial payment from Bariven's parent," Pequiven, in finding Bariven's assent to a contract). But as described above (*see supra* § II.A.2), the record indisputably established that *PDVSA*, not Pequiven, is Bariven's parent. *See* D.E. 71 ¶ 5 (plaintiff alleging PDVSA was Bariven's parent); D.E. 81 at 2 (district court stating "Bariven is a wholly owned subsidiary of PDVSA"). The district court's reliance on this incorrect "fact" — that Pequiven was Bariven's parent — to conclude Bariven contracted with Plaintiff is reversible error. *See, e.g.*, *Arrington*, 139 F.3d at 875–76.

Finally, the district court endorsed Plaintiff's attempt to navigate its lack of documentary evidence by contending that the statute of frauds was satisfied because Bariven "received and accepted" the goods. D.E. 153 at 10–11. But the record at most reflects that Plaintiff *shipped* goods from ports in the Netherlands. *See* D.E. 71, Ex. A. There is no proof of receipt and acceptance. *See* D.E. 153 at 11 (identifying facts relied on); *see also S. Cent. Steel, Inc. v. McKnight Constr. Co.*, 2007 WL 9701114, at *6–7 (S.D. Ga. Jan. 29, 2007) (holding Georgia's identical statute of frauds precluded enforcement of purported contract where plaintiff failed to prove goods were, in fact, received). On this record, a reasonable juror could have found that Plaintiff failed to meet its burden to show Bariven received and accepted goods. This Court therefore should reverse.

**B.**    **The District Court Erred in Holding That Plaintiff Had Carried Its Summary Judgment Burden as to Its Claim Against Pequiven**

Despite a lack of subject-matter jurisdiction, the district court incorrectly held that Plaintiff established its entitlement to summary judgment on the merits of its contract claim against Pequiven. Plaintiff's contract claim fails on the merits for the same reasons that its claim that the commercial-activity exception applies fails: the alleged "contract" between Pequiven and Plaintiff was not entered into by anyone with authority to bind Pequiven and, in any event, was not supported by consideration. *See supra* §§ II.A.1–2.

First, under Florida law, "[i]t is plaintiff's burden to establish the authority of an agent to act on the principal's behalf." *Fla. Power & Light Co. v. McRoberts*, 257 So. 3d 1023, 1026 (Fla. 4th DCA 2018). But as discussed above (*see supra* § II.A.1), Plaintiff provided no evidence that Saul Silva had authority, either actual or apparent, to bind Pequiven. *See Fla. Power*, 257 So. 3d at 1026 (providing Florida's standard for apparent and actual authority). As a result, Plaintiff failed to "establish affirmatively" its purported contract was valid.

Second, even assuming Saul Silva had authority to bind Pequiven (he did not), the agreement is invalid because it was not supported by consideration. *See Vega*, 564 F.3d at 1272 (holding a plaintiff must establish the existence of a valid contract, including "consideration"). Plaintiff did not establish with any evidence that Pequiven benefited from, or that Plaintiff was prejudiced by, its agreement with

Pequiven. *See supra* § II.A.2. Because Plaintiff did not meet its burden to establish there was no genuine issue of material fact as to each element of its breach-of-contract claim, Plaintiff was not entitled to summary judgment.

## IV. THE DISTRICT COURT DENIED DEFENDANTS THEIR DUE PROCESS AND LEGAL RIGHTS

Throughout the litigation, Defendants made clear that the ongoing political crisis in Venezuela prevented it from accessing their own facilities and personnel. *See* D.E. 82 at 4; D.E. 84 at 4; D.E. 93-1; D.E. 93-2; D.E. 133 at 38–50; D.E. 140. Yet, despite understanding the clear import of the crisis on Defendants' ability to secure vital discovery in this case, the district court abused its discretion by granting summary judgment on the contract claims against Defendants.

As Defendants explained, the district court should have denied Plaintiff's summary judgment motion, or at minimum deferred its decision, until such time that the crisis and its effect on Defendants' access to discovery were resolved. In refusing, the district court violated Defendants' due process rights and contravened Rule 56(d) of the Federal Rules of Civil Procedure. The U.S. Supreme Court has recognized that due process requires an "opportunity to present every available defense." *See Lindsey v. Normet*, 405 U.S. 56, 66 (1972). This principle is reflected in Rule 56(d), which provides that "the interests of justice sometimes require postponement in ruling on a summary judgment motion." *Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559, 570 (11th Cir. 1990).

Defendants' inability to access its corporate records, files, and personnel left Defendants, Plaintiff, and the district court unable to answer questions about key issues in this case. For instance, despite asserting a contract claim against Bariven, Plaintiff *never* produced a written contract between the parties, indicating that no copies of such an agreement are within Plaintiff's possession, custody, or control. *See supra* § III.A. Thus, if such written agreement ever existed, it is likely that the only remaining copies are to be found within Bariven's documents in Venezuela.

The district court concluded that because "[n]either the Plaintiff nor the Court has prevented the Defendants from engaging in discovery or litigating this case . . . even further delay in this case is untenable and unjustified." D.E. 153 at 12. But that was not the correct inquiry. This Court has recognized that a defendant has the right to put forward a full and fair defense and does not require that situation to be caused by the court or the opposing party. *See Fernandez*, 906 F.2d at 570 ("This circuit recognizes that the interests of justice sometimes require postponement in ruling on a summary judgment motion.") (citing *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 871 (11th Cir. 1988)).

Thus, the district court's grant of summary judgment against Defendants before they had a meaningful opportunity to obtain vital discovery violated both the letter and spirit of Rule 56(d) and was an abuse of discretion. *See Jones*, 120 F.3d at 253 (concluding "that the district court abused its discretion in deciding the

summary judgment motion" because the nonmoving party was unable to obtain "the information they needed through the normal discovery process").

## **CONCLUSION**

For all these reasons, the Court should vacate the Final Judgment, reverse the district court's ruling on summary judgment, and remand with instructions that the district court dismiss the action with prejudice.

Dated:  October 6, 2023

Respectfully submitted,

By: /s/ *Claire A. DeLelle*
Claire A. DeLelle
Benedict S. Bernstein
White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C., 20005
claire.delelle@whitecase.com
benedict.bernstein@whitecase.com
(202) 626-3600

Jaime A. Bianchi
Veronica Gordon
White & Case LLP
200 S Biscayne Blvd.
Miami, FL 33131
jbianchi@whitecase.com
vgordon@whitecase.com
(305) 371-2700

Daniel Grossbaum
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
dan.grossbaum@whitecase.com
(212) 819-8200

*Counsel for Petroquímica de Venezuela, S.A. and Bariven, S.A.*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-face and volume limitations of Federal Rules of Appellate Procedure 32(a)(5)–(7) and this Court's local rules because it contains 11,132 words, excluding parts of the brief exempted by Rule 32(f) and this Court's local rules, and has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *Claire A. DeLelle*
Claire A. DeLelle

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of October 2023, the foregoing was electronically filed through this Court's CM/ECF system and a copy was electronically served through the CM/ECF system on all registered counsel of record.

I further certify that, on October 6, 2023, four copies of the foregoing document were dispatched via third-party commercial carrier to the following:

Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St. N.W.
Atlanta, Georgia 30303


/s/ *Claire A. DeLelle*
Claire A. DeLelle